# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DANA MECUM, | ) |
| | ) |
| Plaintiff, | ) No. 15 C 8548 |
| | ) |
| v. | ) |
| | ) Magistrate Judge M. David Weisman |
| WEILERT CUSTOM HOMES, LLC, | ) |
| LIEDERBACH & GRAHAM | ) |
| ARCHITECTS, PHILLIP J. | ) |
| LIEDERBACH, and R. MICHAEL | ) |
| GRAHAM, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff hired defendants Liederbach & Graham, Phillip J. Liederbach, and R. Michael Graham to design a multimillion-dollar home for him in Lake Geneva, Wisconsin. Plaintiff said the parties' agreement was a handshake deal that did not include an agreement to arbitrate. Defendants said the parties entered into a standard American Institute of Architects ("AIA") written agreement, which contains an arbitration clause. On August 13, 2018, a jury agreed with defendants. (*See* Jury Verdict, ECF 192.) The case is before the Court on plaintiff's Federal Rule of Civil Procedure ("Rule") 50(b) renewed motion for judgment as a matter of law. For the reasons set forth below, the Court denies the motion [199].

## Discussion

Rule 50 permits a court to enter judgment as a matter of law when "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). In

deciding a Rule 50 motion, the Court views the evidence "in the light most favorable to the non-moving party." *Payne v. Milwaukee Cty.*, 146 F.3d 430, 432 (7th Cir. 1998). The Court "will overturn a jury verdict for a [party] only if [it] conclude[s] that no rational jury could have found for [that party]." *Waite v. Bd. of Trs. of Ill. Cmty. Coll. Dist. No. 508*, 408 F.3d 339, 343 (7th Cir. 2005) (quotations omitted).

Plaintiff argues that the jury verdict is fatally flawed because the evidence established the AIA contract was missing an essential term—price. Defendants contend that plaintiff waived this issue by failing to raise it in the pretrial order as an issue for either the Court or the jury to address. *See* Local Rule Form 16.1.4, Pretrial Order ¶ 2(h) & n.9 (requiring parties to a jury trial to submit trial briefs and stating that "[a]ny theory of liability or defense that is not expressed in a party's trial brief will be deemed waived"); (Pretrial Order, ECF 147). As defendants admit, however, plaintiff raised the issue in his motion for judgment as a matter of law at the close of the evidence and in his closing argument to the jury (*see* Defs.' Resp. Opp'n Pl.'s Renewed Mot. J. Matter Law, ECF 213 at 3), apparently without objection from defendants. (*See* 8/13/18 Trial Tr., ECF 196 at 431-34.)[1] Under the circumstances, the Court finds that plaintiff has adequately preserved the issue.

On the merits, plaintiff argues that the price term in the AIA contract, "Fourteen (14) percent of the Cost of the Work" (*see* Defs.' Resp. Pl.'s Renewed Mot. J. Matter Law, Ex. C, ECF 213-4 § 11.1), is too indefinite to create a valid contract. Wisconsin law, which the parties agree governs, deems price to be an essential term of a contract for services. *See Goebel v. Nat'l Exchangors, Inc.*, 277 N.W.2d 755, 765 (Wis. 1979). That does not mean, however, that "the exact amount in figures must be stated in the agreement." *Id.* (quotation omitted). Rather, "the

---

[1] The Court says "apparently" because the transcript of plaintiff's closing argument is not on the docket and was not provided to the Court by either party.

price must, by the terms of the agreement, be capable of being definitely ascertained." *Id.* (quotation omitted); *see Herder Hallmark Consultants, Inc. v. Regnier Consulting Grp., Inc.*, 685 N.W.2d 564, 567 (Wis. Ct. App. 2004) ("'If the parties provide a practicable method for determining th[e] price or compensation there is no such indefiniteness or uncertainty as will prevent the agreement from being an enforceable contract.'") (quoting 1 *Corbin on Contracts: Formation of Contracts* § 4.3 (rev. ed. 1993)); *see also Headstart Bldg., LLC v. Nat'l Ctrs. for Learning Excellence, Inc.*, 905 N.W.2d 147, 153 (Wis. Ct. App. 2017) (stating that "[a] contract [that] does not specify a price . . . is enforceable if it specifies the manner by which the price is to be ascertained or can be determined" and holding that an option to purchase property for its appraised value, which set forth the method of appraisal, was sufficiently definite) (quotation omitted); *Gerard v. Gerard*, 2015 WI App 68 ¶ 14, 869 N.W.2d 171 (Wis. Ct. App. 2015) (per curiam) (stating that "a contract . . . is sufficiently definite if it specifies a 'practicable method for determining . . . price or compensation'" and holding that a contract to pay the amount due on a mortgage in one year was enforceable) (quoting *Herder Hallmark,* 685 N.W.2d at 567).

Moreover, even if:

> "[T]he parties have expressed an agreement in terms so vague and indefinite as to be incapable of interpretation with a reasonable degree of certainty, they may cure this defect by their subsequent conduct and by their own practical interpretation. . . . . If the expressions used leave the subject matter, or the price or the time or any other element of the performance incapable of determination, the rendition of a part or all of the performance may make clear the meaning that should be given to those expressions."

*Nelsen v. Farmers Mut. Auto. Ins. Co.*, 90 N.W.2d 123, 131 (Wis. 1958) (quoting 1 *Corbin on Contracts* § 101); *see Metro Ventures, LLC v. GEA Assocs.,* 717 N.W.2d 58, 67 (Wis. 2006) ("[A] contract that fails to sufficiently address the financing contingency is not void for indefiniteness if the parties' subsequent actions clarify the parties' intent at the time they entered into the

3

contract."); *Herder Hallmark*, 685 N.W.2d at 567-68 (defendant's "acceptance of numerous, valuable assets belonging to [plaintiff] evidences that the parties intended [defendant] to purchase some, if not all, of [plaintiff's] assets when [plaintiff] closed its business," thus "[t]he lack of an agreed upon sale price does not void the parties' contract").

The evidence, viewed favorably to defendants, showed that both parties understood defendants' fee would be fourteen percent of the cost of constructing the home, defendants' invoices to plaintiff were based on fourteen percent of the cost of construction, and plaintiff paid invoices that said defendants' fee was based on fourteen percent of the cost of construction. (*See* Defs.' Resp. Pl.'s Renewed Mot. J. Matter Law, Ex. A, Trial Tr. Excerpts, ECF 213-2 at 177-79, 307, 309, 334, 441; DX 26-29, 31, 38-39.) Given the language of the AIA contract, the parties' mutual understanding of the method for calculating defendants' fee, defendants' invoices reflecting that method, and plaintiff's payment of those invoices, a reasonable jury could find that the price term was sufficiently definite to be the basis for a contract.[2]

Plaintiff relies heavily on *Harper, Drake & Associates v. Jewett & Sherman Co.*, 182 N.W.2d 551 (Wis. 1971) to support his position that the price as defined in the AIA contract was not sufficiently definite. *Harper*, however, does not dictate a different result. In that case, an architecture firm sued to recover for services it had provided to defendant pursuant to an alleged

---

[2] Plaintiff argues that the AIA's integration clause prohibits the Court from looking "to extrinsic evidence beyond the AIA document itself" to define the price term. (Pl.'s Renewed Mot. J. Matter Law, ECF 199 at 12.) There are several problems with this argument. First, plaintiff did not object to the introduction of this evidence at trial and thus has waived his objection to it. Fed. R. Evid. 103. Second, plaintiff is seeking to enforce a clause of a contract that he claims does not exist. Third, though "an integration clause, in conjunction with the parol evidence rule, bars the introduction of extrinsic evidence to vary or contradict the terms of a writing," *Town Bank v. City Real Estate Development, LLC*, 777 N.W.2d 98, 104 (Wis. Ct. App. 2009), *aff'd*, 793 N.W.2d 476, here, extrinsic evidence is being used to assess the validity of the contract, not to vary its terms. *See Brevig v. Webster*, 277 N.W.2d 321, 326 (Wis. Ct. App. 1979) ("[I]n determining whether a contract has been entered into . . . . no relevant evidence, whether parol or otherwise, is excluded.") (quotations omitted).

contract. *Id.* at 553. As in this case, the architect said its fee would be a percentage of the cost of construction. *Id.* at 554. However, in *Harper*, the owner fired the architect before the building was built. *Id.* at 553-54. The architect then sought recovery based on quantum meruit, using a cost-of-construction percentage in seeking compensation. The *Harper* court rejected this approach in assessing an appropriate recovery. *Id.* at 557.

*Harper* is distinguishable on two fronts. First, the issue before the *Harper* court was *not* whether a contract existed between the parties. Significantly, the architects in *Harper* abandoned their contract claims before the matter was submitted to the jury. *Id.* at 554. Therefore, the *Harper* court was only deciding whether terms of the "unenforceable" AIA contract could be considered in assessing the architect's reasonable compensation in an action for quantum meruit. *Id.* Admittedly, *Harper* contains language that suggests a percentage of cost of construction is too indefinite to be the basis of an enforceable contract when the cost of construction is unknown at the time of the contract's attempted formation. *Id.* at 557. However, that language must be considered dicta because quantum meruit is an equitable remedy, not a contractual remedy.[3] *Lindquist Ford, Inc. v. Middleton Motors, Inc.*, 557 F.3d 469, 478 (7th Cir. 2009) ("Although the remedy of quantum meruit was developed as part of the common law of contracts to avoid unjust enrichment under a contract implied by law, equitable considerations influence the determination of whether recovery is warranted in a given case. The duty to pay arises not from the intent of the parties but from the law of natural justice and equity.") (quotation omitted).

---

[3] Additionally, the *Harper* court cites approvingly to *Barnes v. Lozoff,* 123 N.W.2d 543 (1963), noting that "[i]n *Barnes*, the parties made a contract and specified how the architects would be compensated." *Harper*, 182 N.W.2d at 556. Yet, *Barnes* was a cost-of-construction case premised on a verbal contract and a general description of project to build a fifty-six-unit motel. *Barnes*, 123 N.W.2d at 544. There was no written project description or estimate of cost of the project. The *Harper* court's endorsement of *Barnes* is telling. While the transactional work in the instant matter was not a model of clarity, compared to the "agreement" reached in *Barnes*, the instant agreement seems iron clad.

Second, the cost-of-construction figure the architect in *Harper* used as a basis for his contract claim was a hypothetical number devised solely by the architect. *Id.* at 554. Under the circumstances, the *Harper* court said, "[i]t would abuse the fundamental precepts of contract interpretation to hold that [defendant] bound himself and his company to pay five percent of whatever [*plaintiff*] *should later decide* would be the actual cost of the building." *Id.* at 557 (emphasis added). Here, the AIA contract defined how cost of construction would be calculated, (*see* Pl.'s Reply Supp. Renewed Mot. J. Matter Law, Ex. B, AIA Contract, ECF 219-2 § 6), and plaintiff knew the estimated cost of constructing the house, and the impact his design and material decisions had on that cost, from the outset of the parties' relationship. (*See* Trial Tr. Excerpts, ECF 213-2 at 178-79, 309, 334-35.) Based on the evidence presented, plaintiff, more than defendants, had the ability to control the size, scope and most importantly, the cost, of the project. Because plaintiff knew, and played an integral role in determining, the estimated cost of construction throughout the parties' relationship, *Harper* is inapposite.[4]

In short, the Court has no basis for disturbing the jury's determination that the price term was sufficiently definite to create an enforceable contract. Accordingly, plaintiff's renewed motion for judgment as a matter of law is denied.

**SO ORDERED.**   ENTERED: December 10, 2018

**M. David Weisman**
**United States Magistrate Judge**

---

[4] Moreover, *Harper* simply cannot be understood to mean that a contract term that is premised on a percentage of value of future activity is not sufficiently definite to form a contract. Many enforceable contracts do just that. In the legal profession alone, contingent fee contracts as well as hourly rate engagement contracts to handle a specified matter rely on future calculations in setting contract terms. If *Harper* were interpreted as plaintiff suggests, those contracts would be invalid.